IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
IN ADMIRALTY
No. 7:16-CV-237-D

NEW HAMPSHIRE INSURANCE,          )
COMPANY, AS SUBROGEE OF           )
SANCTUARY, LLC                    )
                                  )
                    Plaintiff,    )
                                  )
        v.                        )          **ORDER**
                                  )
                                  )
BENNETT BROTHERS YACHTS, INC.     )
                                  )
                    Defendant.    )

On June 29, 2016, New Hampshire Insurance Company ("NHIC" or "plaintiff"), as subrogee

of Sanctuary LLC, sued Bennett Brothers Yachts, Inc. ("Bennett Brothers" or "defendant") for

breach of contract, breach of implied warranty of workmanlike performance, and negligence. See

Compl. [D.E.1]. On September 18, 2017, Bennett Brothers moved for summary judgment [D.E. 20]

and filed a supporting memorandum [D.E. 21]. On October 23, 2017, NHIC responded in opposition

[D.E. 28]. On November 6, 2017, Bennett Brothers replied [D.E. 30]. On November 9, 2017, NHIC

moved to exclude Bennett Brothers's Exhibit N [D.E. 32]. On December 1, 2017, Bennett Brothers

responded [D.E. 34]. As explained below, Bennett Brothers's motion for summary judgment is

granted, and NHIC's motion to exclude Exhibit N is denied as moot.

I.

NHIC insured Sanctuary LLC's Motor Yacht ("the Vessel"), a sixty-foot power catamaran,

for $2,985,000. See Compl. ¶ 1. On July 30, 2015, the Vessel struck a submerged object in the

intracoastal waterway in South Carolina. [D.E. 28] 2. A local commercial diver initially examined the Vessel. See id. On July 31, 2015, Bennett Brothers agreed to haul the Vessel to its facility for additional examination and repair. See Compl. ¶ 5; Answer [D.E. 10] ¶ 5. On August 1, 2015, Bennett Brothers dropped and damaged the Vessel while moving the Vessel to land for repairs. See Compl. ¶ 5; [D.E. 22] ¶ 1.

On August 3, 2015, Michael Andrews, a professional marine surveyor hired by NHIC, and Bill Donnalley, a professional marine surveyor hired by Bennett Brothers's insurance carrier, conducted a joint survey of the Vessel's damages. See [D.E. 28] 3; Pl. Ex. 5 [D.E. 29-5]. Andrews concluded that the Vessel could be repaired "with no lasting effects." Pl. Ex. 10 [D.E. 29-10] 4; Def. Ex. A [D.E. 23-1]. Two independent vessel repair yards provided repair estimates. See Pl. Ex. 10 at 3. Fosters Yacht Service estimated that the Vessel could be repaired for $328,185. See id. Bradford Marine, Inc. estimated that the Vessel could be repaired for $820,625. See id. Bennett Brothers also inspected the Vessel and estimated that repairs would cost $246,960. See Def. Ex. C [23-3] 2. On August 10, 2015, the Vessel's manufacturer voided the five-year hull warranty due to the damages incurred when Bennett Brothers dropped the Vessel. See Pl. Ex. 6 [D.E. 29-6].

On November 13, 2015, NHIC treated the Vessel as a constructive total loss and paid the insured $2,985,000, the limit of the insurance policy. See Compl. ¶ 6; Pl. Ex. 9 [D.E. 29-9]. In January 2016, NHIC sold the Vessel at a salvage sale to Ron Brimlow for $900,000. See Pl. Ex. 12 [D.E. 29-12]. NHIC's net recovery from the sale was $794,313.

NHIC seeks $2,190,686.72 in damages, representing the constructive total loss of the Vessel. Compl. ¶¶ 13, 15, 19. NHIC calculated the total loss as follows: insured value of the Vessel ($2,985,000) less salvage value ($794,313.28). See Def. Ex. F [D.E. 23-6] 3.

2

II.

Summary judgment is appropriate when, after reviewing the record as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Federal admiralty law governs. A plaintiff has "a maritime cause of action whether he sues in contract for its breach by a person with whom there was a contract for repairs of the vessel, or in tort for the negligent performance of the maritime contract." Todd Shipyards Corp. v. Turbine Serv. Inc., 674 F.2d 401, 412 (5th Cir. 1982); see One Beacon Ins. Co. v. Crowley Marine Servs., 648 F.3d 258, 262 (5th Cir. 2011); Clear Marine Ventures, Ltd. v. Cazadores, Inc., No. 08-22418, 2010 WL 11504400, at *2 (S.D. Fla. Jan. 28, 2010) (unpublished).

As for NHIC's claim that it is entitled to damages for the constructive total loss of the Vessel, the owner of a damaged vessel is entitled to recover damages in an amount "sufficient to restore the injured vessel to the condition in which she was at the time the collision occurred." F.C. Wheat

3

Maritime Corp. v. United States, 663 F.3d 714, 721 (4th Cir. 2011) (quotation omitted); see The

Baltimore, 75 U.S. (8 Wall) 377, 385 (1869); Hewlett v. Barge Bertie, 418 F.2d 654, 657 (4th Cir.

1969). The amount of recovery depends on whether the vessel is considered a "constructive total

loss," or whether it can be repaired. See, e.g., The Baltimore, 75 U.S. (8 Wall) at 385–86; Gaines

Towing & Transp., Inc. v. Atlantia Tanker Corp., 191 F.3d 633, 635 (5th Cir. 1999) (per curiam);

Self Towing, Inc. v. Brown Marine Servs., Inc., 837 F.2d 1501, 1506 (11th Cir. 1988).[1] A

"constructive total loss" occurs when the cost of repairs is greater than the fair market value of the

vessel immediately before the damage occurred. See Gaines Towing & Transp., Inc., 191 F.3d at

635; Self Towing, Inc., 837 F.2d at 1506; Hewlett, 418 F.2d at 657; Dann Marine Towing, LC v.

Gen. Ship Repair Corp, No. MJG-12-1610, 2017 WL 3916992, at *21 (D. Md. Sept. 7, 2017)

(unpublished); F.C. Wheat Maritime Corp. v. United States, 712 F. Supp. 2d 471, 473 (E.D. Va.

2010), aff'd, 663 F.3d 714 (4th Cir. 2011). When a damaged vessel is a constructive total loss, the

measure of damages is the pre-casualty fair market value of the vessel. See Standard Oil Co. v. S.

Pac. Co., 268 U.S. 146, 155–56 (1925); Hewlett, 418 F.2d at 657. However, "[w]here a damaged

vessel is not a total loss, the owner is entitled to recover the reasonable cost of repairs necessary to

restore it to its pre-damage condition." F.C. Wheat Maritime Corp., 712 F. Supp. 2d at 473; see The

Baltimore, 75 U.S. (8 Wall) at 386; Bunge Corp. v. Am. Commercial Barge Line Co., 630 F.2d

1236, 1241 (7th Cir. 1980); Hewlett, 418 F.2d at 657; Clear Marine Ventures, 2010 WL 11504400,

at *5.

---

[1]A vessel also can be considered a "total loss." For example, a total loss occurs when the
vessel sinks and is beyond recovery. See, e.g., Hewlett, 418 F.2d at 657; O'Brien Bros. v. The
Helen B. Moran, 160 F.2d 502, 504 (2d Cir. 1947); In re Lebeouf Bros. Towing Co., 588 F.
Supp. 130, 131 (E.D. La. 1984).

In its complaint, NHIC requested damages for the constructive total loss of the Vessel. Compl. ¶¶ 13, 15, 19. NHIC reiterated its constructive total loss claim in the Rule 26(a) initial disclosures. See Def. Ex. F. [D.E. 23-6] 3. In its motion for summary judgment, Bennett Brothers argues that NHIC cannot recover damages for the constructive total loss of the Vessel because the Vessel was repairable. See [D.E. 21] 2. In support, Bennett Brothers cites several pieces of evidence, including a Marine Damage Report that Michael Andrews, NHIC's expert, prepared shortly after the incident. See Def. Ex. A [D.E. 23-1]; Pl. Ex. 10 [D.E. 29-10]. Andrews concluded that the Vessel could be repaired with "no lasting effects from [the] damages." Pl. Ex. 10 at 4. Andrews's report included repair estimates from two vessel repair yards, Fosters Yacht Service and Bradford Marine, Inc. See id. at 3. Fosters Yacht Service estimated that repairs would cost $328,185. See id. Bradford Marine, Inc. estimated that repairs would cost $820,625. See id. Bennett Brothers also inspected the Vessel and estimated that repairs would cost $246,960. See Def. Ex. C [D.E. 23-3]. Bill Trenkle, Bennett Brothers's expert, inspected the Vessel after Brimlow purchased it. See Def. Ex. B [D.E. 23-2] 6. Trenkle concluded that Brimlow repaired and restored the Vessel to its pre-loss condition for approximately $40,000. See id. at 4.

In supplemental disclosures and interrogatories, NHIC appears to abandon its claim for damages for constructive total loss of the Vessel. See Def. Ex. L [D.E. 23-12]; Def. Ex. M [D.E. 23-13] 2 ("Plaintiff is not claiming as damages that [the Vessel] was a constructive total loss . . . ."). In opposition to Bennet Brothers's motion for summary judgment, however, NHIC argues that the Vessel was a total constructive loss. See [D.E. 28] 8. To support this position, NHIC relies on the Vessel manufacturer's cancellation of the five-year hull warranty and a letter from the Vessel's architect. See id. at 3; Pl. Ex. 6 [D.E. 29-6]; Pl. Ex. 7 [D.E. 29-7]. The letter from the manufacturer stated that it voided the warranty because a repaired hull would not have the strength of the original

hull. See Pl. Ex. 6. The architect's letter stated that any repair would be "remedial only." Pl. Ex. 7.

NHIC argues that it was "compelled to declare [the Vessel] a constructive total loss" because the manufacturer voided the warranty, and there were extensive damages and repair costs. See [D.E. 28] 4. The court rejects the argument. When repairs to a vessel are feasible, damages are calculated with reference to cost of repairs. See The Baltimore, 75 U.S. (8 Wall) at 386; Bunge Corp, 630 F.2d at 1241; Hewlett, 418 F.2d at 657; F.C. Wheat Maritime Corp., 712 F. Supp. 2d at 473. The record demonstrates that the Vessel could be repaired, and the manufacturer's cancellation of the hull warranty is not evidence to the contrary. Indeed, NHIC's expert opined that the Vessel could be repaired. See Pl. Ex. 10. Moreover, a vessel is a constructive total loss when the cost of repairs exceeds the fair market value of the vessel immediately before the damage occurred. See Gaines Towing & Transp., Inc., 191 F.3d at 635; Self Towing, Inc., 837 F.2d at 1506; Hewlett, 418 F.2d at 657; Dann Marine Towing, LC, 2017 WL 3916992, at *21; F.C. Wheat Maritime Corp., 712 F. Supp. 2d at 473; In re Lebeouf Bros. Towing Co., 588 F. Supp. at 131. NHIC has not produced any evidence to show the cost of repairs exceeded the fair market value of the Vessel immediately before the damage occurred. Accordingly, no genuine issue of material fact exists concerning whether NHIC can recover damages for the constructive total loss of the Vessel.

In its memorandum in opposition to Bennett Brothers's motion for summary judgment, NHIC advances new claims for damages. First, NHIC argues that it should receive $1.6 million in damages for the diminution in value of the Vessel. [D.E. 28] 8; Def. Ex. L; Def. Ex. M. The diminution in value is the difference between the Vessel's alleged fair market value before the accident, and the alleged fair market value after the accident. Alternatively, NHIC argues that it should receive $820,625 in damages based on Bradford Marine's repair estimate. See [D.E. 28] 15.

NHIC never amended its complaint to seek damages for diminution in value or cost of repairs. Instead, NHIC discussed these theories in supplemental disclosures, discovery, and briefing. See [D.E. 28]; Def. Ex. L; Def. Ex. M. Establishing damages for cost of repairs or diminution in value requires proving a separate set of facts from constructive total loss. If NHIC wished to pursue such claims for damages, NHIC needed to request leave to amend its complaint. NHIC failed to do so, and the deadline for amending the complaint has passed. See Scheduling Order [D.E. 15]. Moreover, NHIC cannot amend its claim for damages through supplemental briefing. See vonRosenberg v. Lawrence, 849 F.3d 163, 167 n.1 (4th Cir. 2017); S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184–85 (4th Cir. 2013); Hexion Specialty Chems., Inc. v. Oak-Bark Corp., No. 7:09-CV-105-D, 2011 WL 4527382, at *10 (E.D.N.C. Sept. 28, 2011) (unpublished). Furthermore, good cause does not exist to amend the scheduling order. See, e.g., Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298–99 (4th Cir. 2008). Accordingly, the court grants Bennett Brothers's motion for summary judgment.

On November 9, 2017, NHIC objected to Bennett Brothers's Exhibit N, the expert appraisal of James K. Wallace [D.E. 32]. The court did not consider this evidence in ruling on Bennett Brothers's motion for summary judgment. Thus, the court denies as moot the motion to exclude.

III.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 20]. The court DENIES as moot plaintiff's objection to defendant's Exhibit N [D.E. 32]. Defendant may file a motion for costs in accordance with the Federal Rules of Civil Procedure and the court's local rules. The clerk shall close the case.

SO ORDERED.  This **27** day of December 2017.

_____
JAMES C. DEVER III
Chief United States District Judge
